Eugene HALPERIN, Individually and as Trustee of the Eugene Halperin Trust, Plaintiff,

v.

EDWARDS AND HANLY et al., Defendants.

Civ. A. No. 75 C 1421.

United States District Court, E. D. New York.

April 6, 1977.

**122**

Berg & Duffy, James P. Duffy, III, Lake Success, N. Y., for plaintiffs; Stephen Hochhauser, New York City, of counsel.

Delson & Gordon, New York City, for defendants Edwards and Hanly.

Joseph G. Aronson, Newark, N. J., for defendant.

Arthur N. Abbey, New York City, for defendant Meng.

Martin, Obermaier & Morvillo, New York City, for defendant Shields.

Chas. M. Mattingley, Jr., Old Bethpage, N. Y., for defendants Epstein, Fasulo, Franke, Kennedy, Murphy and Walton.

Joseph Lotterman, New York City, for defendant Gillman.

Seward & Kissel, New York City, for defendant Carroll.

Norman B. Arnoff, New York City, for defendant B. T. Edwards.

Charles A. Crocco, Jr., Lunney & Crocco, New York City, for defendant Kingsbury.

Geo. F. Pavarini, Eastchester, N. Y., for defendants Flynn and O'Hare.

Wm. J. Manning, New York City, for defendant Bocklett.

Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, for defendant Boesky.

Chasan, Leyner, Holland & Tarrant, Jersey City, N. J., Jerome M. Selvers, New York City, for defendant Aronson.

Bernard Jay Coven, P. C., New York City, for other defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

The plaintiff in this action, Eugene Halperin, invested $100,000 in cash and securities in a limited partnership in Edwards and Hanly. That partnership became insolvent in August of 1975, and the plaintiff sues under provisions of the securities law discussed below.

Defendant Edwards moves pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(1), (6) for an order dismissing the complaint for failure to specify the circumstances constituting fraud, for lack of jurisdiction over the subject matter and for failure to state a claim. Defendants Carroll, Meng and Bocklett move pursuant to Federal Rules of Civil Procedure 12(b)(6) to dismiss as to them for failure to state a claim.

### FACTS

The plaintiff alleges in his complaint that he is 62 years old and was a retired engineer who looked for investment advice to the brokerage firm of Edwards and Hanly.

In the spring of 1970 the plaintiff talked to Richard Flynn, a general partner in the firm, and to various other partners about investing his entire life savings and inheritance. The defendants recommended that Halperin invest in a limited partnership in their firm.

The plaintiff alleges that the defendants "fraudulently failed to inform plaintiff that

their recommended investment was speculative, risky, and unsuitable for plaintiff, and failed to inform plaintiff that only an individual with sophistication and experience in financial and investment matters could fully appreciate and comprehend the risks involved."

As a result, on May 29, 1970 the plaintiff became a limited partner in Edwards and Hanly. On July 16, 1970 the New York Stock Exchange Board of Governors approved the plaintiff's admission as a limited partner.

On August 22, 1972 the partnership agreement was amended to provide for the continuation of business of the firm until September 30, 1977.

In April, 1973, the plaintiff requested a termination of his limited partnership and a withdrawal of his investment. On June 4, 1973 the defendants told the plaintiff that the rules of the New York Stock Exchange limited the right of partner to withdraw his capital if such withdrawal would impair net capital requirements.

On July 13, 1973 the plaintiff executed an amendment to his limited partnership agreement which altered his investment to $83,200 in cash and also agreed with the defendants that he could withdraw from the partnership as soon as substitute capital could be found.

On July 19, 1973 the defendants confirmed the withdrawal commitment and acknowledged a request by the plaintiff to transfer his interest to a trust of which the plaintiff was the settlor and sole trustee. On March 4, 1974 the Eugene Halperin Trust became a limited partner in the firm.

The plaintiff alleges that since April, 1973, he has wished to withdraw from the firm, but that Edwards and Hanly did not make a good faith effort to obtain substitute capital, has permitted other limited partners to withdraw, and has accepted capital investments that could have been substituted for the plaintiff.

On those facts the plaintiff alleges that the defendants fraudulently induced the plaintiff to purchase and retain his limited partnership in violation of the Securities Exchange Act of 1934, § 10(b) (15 U.S.C. § 78j(b)), and Rule 10b–5 promulgated thereunder, and that the defendants' recommendations violated the so-called "Know Your Customer" suitability rules set forth in Rule 405 of the New York Stock Exchange adopted pursuant to 15 U.S.C. § 78f, and Article III, § 2, of the Rules of Fair Practice of the National Association of Securities Dealers adopted pursuant to 15 U.S.C. § 78o–3. It should be noted that there is no dispute here that the plaintiff's investment in the limited partnership in Edwards and Hanly was a security under the above laws, *Hirsch v. duPont,* 396 F.Supp. 1214, 1227 (S.D.N.Y.1975).

On these claims the plaintiff seeks compensatory damages of $83,200 plus interest and $200,000 in punitive damages.

## I

The defendant Edwards moves to dismiss the complaint because of the failure to set forth any specific allegations of fraud or wrongdoing by the defendant Edwards. The allegations in the complaint do not name the defendant Edwards, though they do name two partners of firm and further they do allege the nature of the fraud, namely, that the defendants did not tell the plaintiff of the true risks involved in his investment. It is apparently Mr. Edwards argument that because the complaint does not allege acts by him, he is not liable.

■ Unfortunately, the New York State Partnership Law, § 24 (McKinney 1948), clearly states that partners are jointly and severally liable for "any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership . . . .". Therefore, the failure to specify acts of fraud committed personally by Mr. Edwards is irrelevant, and so that motion is denied.

## II

Defendants Carroll, Meng, and Bocklett move to dismiss on the ground that they

became partners after the fraud occurred in this case and so they are not liable. Defendant Edwards also moves to dismiss the part of the plaintiff's claim that relates to the alleged fraud in 1973. As the basis for these motions are the same, they will be discussed together.

The moving defendants were partners in Edwards and Hanly during the following periods:

Carroll — August 12, 1971
              to December 31, 1974
Meng    — July 13, 1973
              to January 31, 1974
Bocklett — February 10, 1972
              to May 31, 1973
Edwards — Entire period.

The major events alleged in the complaint occurred in two periods, namely, May through July 1970 when the plaintiff invested in the limited partnership, and May through July 1973 when the plaintiff attempted to withdraw his investment but could not.

Since the defendants Carroll, Meng and Bocklett became partners after the purchase period, it is their argument that they can only be liable for the alleged fraud in 1973, and any claim based on that fraud is barred by the Supreme Court's decision in *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975).

In *Blue Chip Stamps* the Supreme Court reaffirmed the holding of *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir.), *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), that an action under Rule 10b–5 requires the purchase or sale of a security. The Court held that it was not a violation of that Rule when an offeree of a stock failed to purchase it because of a fraudulent prospectus since he was neither a purchaser nor a seller.

In this case, however, the plaintiff does allege the purchase of a limited partnership which, as we have noted above, is a security, *Hirsch v. duPont, supra.* It is the plaintiff's position that he was fraudulently induced to invest in the firm and as part of a continuing fraud, he retained the security.

■ The plaintiff cannot argue, however, that the alterations of the partnership agreement in 1972, 1973 and 1974 were purchases of securities. The Second Circuit has recently held that before "changes in the rights of a security holder can qualify as the 'purchase' of a new security under Section 10(b) and Rule 10b–5, there must be such significant change in the nature of the investment or in the investment risks as to amount to a new investment." *Abrahamson v. Fleschner,* Docket No. 75–7203, Slip Op. 212 at 6220 (2d Cir. Feb. 25, 1977). As the changes in Mr. Halperin's agreement did not significantly effect his investment risks, under *Abrahamson* they were not purchases for the purposes of Section 10(b) and Rule 10b–5.

However, it is the plaintiff's argument that the essence of the fraud here was the failure to inform him of the true risks of investing in the limited partnership at the time he purchased it in 1970, and that he was not fully informed of the risks until August of 1975 when the risks became all too obvious.

It is the defendants argument that what is alleged here are two independent frauds, namely, that the plaintiff was fraudulently induced to invest in 1970 and was then fraudulently induced to retain his investment in 1973. As to the second fraud, the defendants argue the plaintiff has no cause of action under Rule 10b–5 because this was merely fraudulently induced retention unconnected to any purchase or sale.

These arguments raise the interesting question of the reach of *Blue Chip Stamps.* In other words, where does fraud in connection with the purchase of a security end and where does fraud in connection with the retention of a security begin?

In *Blue Chip Stamps* the plaintiff had been defrauded into not purchasing a security. The reasoning, however, is equally applicable where the plaintiff is defrauded into not selling his securities and thus retains them. *Williams v. Sinclair,* 529 F.2d 1383 (9th Cir.), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976); *Marsh v. Armada Corp.,* 533 F.2d 978, 981 (6th Cir. 1976). In fact the Supreme Court in *Blue*

*Chip Stamps* itself upheld the exclusion by the purchaser-seller requirement of "actual shareholders in the issuer who alleged that they decided not to sell their shares because of an unduly rosy representation or a failure to disclose unfavorable material." 421 U.S. at 737–738, 95 S.Ct. at 1926.

■ The question then is whether any of the alleged fraudulent activities occurring after the purchase were in connection with purchase of the security. In *Kogan v. National Bank of North America,* 402 F.Supp. 359, 361 (E.D.N.Y.1975), this Court laid out the appropriate test as follows:

> "Rule 10b–5 provides that it is unlawful to defraud or misrepresent '. . . in connection with the purchase or sale of any security.' The phrase 'in connection with' has been construed to mean that the fraud practiced must have been prior to or contemporaneous with the sale of securities."

In *Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 194 (3rd Cir. 1976), the Court said that Rule 10b–5 requires "a causal connection between the alleged fraud and the purchase or sale of stock." *See also, Abrahamson, supra,* at 6220.

■ Under either of those tests it is clear that any fraud occurring after the plaintiff's investment was finalized on July 16, 1970, when the Board of Governors of the New York Stock Exchange approved the plaintiff's admission as a limited partner in Edwards and Hanly, is not actionable under Rule 10b–5.

■ Furthermore, under New York State Partnership Law the liability of any partner is limited to fraudulent acts occurring while he was a partner, *Guild v. Herrick,* 51 N.Y.S.2d 326 (Sup.Ct. N.Y.C.1944).

Therefore since Carroll, Meng and Bocklett became partners after July 16, 1970, they are not liable and so their motions to dismiss this claim as to them is granted. Further, Edwards' motion to dismiss the allegations in the complaint alleging fraud after that date is also granted.

### III

The defendants move to dismiss the plaintiff's second cause of action which alleges a violation of Rule 405 of the New York Stock Exchange, and Article III, § 2 of the National Association of Securities Dealers.

In *Colonial Realty Corporation v. Bache & Co.,* 358 F.2d 178 (2d Cir.), *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966), Judge Friendly held that the Stock Exchange rules can give rise to private causes of action. Furthermore, in *Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 410 F.2d 135 (7th Cir.), *cert. denied,* 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88 (1969), the Seventh Circuit held that Rule 405, the rule in this case, provides a private cause of action and that jurisdiction in federal court is granted by 15 U.S.C. § 78aa for such an action.

■ However, our decision is controlled by the recent Second Circuit case of *Lank v. New York Stock Exchange,* 548 F.2d 61 (2d Cir. 1977), which held that while private investors may assert claims under the Rules of Exchanges, members of those exchanges may not. The Court explicitly discussed and rejected *New York Stock Exchange v. Sloan,* 394 F.Supp. 1303 (S.D.N.Y.1975), which held that limited partners could sue under the Rules. This conclusion is confirmed by *Arneil v. Ramsey,* 550 F.2d 774, at 783 (2d Cir. 1977), where the Second Circuit stated that "we have recently held that Section 6 was intended to protect only public investors and that members of an exchange could not base a claim for relief upon a violation of Section 6. *Lank v. New York Stock Exchange,* 548 F.2d 61 (2d Cir. 1977). We believe the rule should be the same for the member firm as for those who own it or provide it with capital."

In *Lank* and *Arneil* the plaintiff was suing the New York Stock Exchange for violation of Section 6 of the Securities Exchange Act of 1934, 15 U.S.C. § 78f. That Section requires the Exchange to enforce compliance with its rules, including Rule 405, by its members. *Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,*

at 141–142. Similarly, if a member of a firm cannot sue the Exchange for a violation of Exchange Rules, a member cannot sue another member of the same firm.

In reliance on *Lank* and *Arneil,* we grant defendants' motion to dismiss the plaintiff's second cause of action.

Finally the defendants cite *In the Matter of Weis Securities, Inc.,* 425 F.Supp. 212 (S.D.N.Y.1977), for the proposition that the plaintiff does not have a claim here at all. However, that case is concerned with the priority of creditors and the effects of a fraud claim upon that priority. It clearly says that the subordinated lenders in that case had stated a claim, and as that is the issue here, we need not now decide what priority, if any, that claim should have.

In summary, the claims against Carroll, Meng and Bocklett are dismissed, the plaintiff's second cause of action is dismissed and the first cause of action is dismissed insofar as it alleges fraud occurring after July 16, 1970. Thus, the only remaining claim is based on the alleged fraud in connection with the plaintiff's purchase of the limited partnership in 1970.

SO ORDERED.