Lawrence DIRKS, Adler Erickson, Darrel Fuhr, Albert Lansing, and Paul Ruby, individually and on behalf of all others similarly situated, and Luke Baer, receiver for Morgan J. Daley Corporation, on behalf of all others similarly situated, individually as Morgan J. Daley Corporation where said corporation has claims herein, and as general partner of Alpha Commodity Pool, a limited partnership, Beta Commodity Pool, a limited partnership, Commanche Commodity Fund, a limited partnership, Chippewa Commodity Fund, a limited partnership, Cherokee Commodity Fund, a limited partnership, Sioux Commodity Fund, a limited partnership, Seneca Commodity Fund, a limited partnership, Tomahawk Commodity Fund, a limited partnership, Data Trend Commodity Fund, a limited partnership, Algon Quinn Commodity Fund, a limited partnership, Apache Commodity Fund, a limited partnership, Cahokia Commodity Fund, a limited partnership, and Cheyenne Commodity Fund, a limited partnership, where any or all said limited partnerships have claims herein, Plaintiffs,

v.

CLAYTON BROKERAGE CO. OF ST. LOUIS INC., Defendant.

Civ. No. 4–84–354.

United States District Court,
D. Minnesota,
Fourth Division.

March 12, 1985.

Richard B. Solum and Terrence J. Fleming, Delaney & Solum, Minneapolis, Minn., for plaintiffs.

Clifford M. Greene, Hugh J. Plunkett, III, Keith J. Halleland, Popham, Haik, Schnobrich, Kaufman & Doty, Minneapolis, Minn., for defendant.

MacLAUGHLIN, District Judge.

This matter is before the Court on plaintiffs' motion for class certification. The Court will grant plaintiffs' motion.

## FACTS

In 1977, David Delbridge, a commodities pool operator based in St. Louis, Missouri, began soliciting investors for limited partnership units in commodity futures pools (Daley Pools). Delbridge conducted his solicitations through a corporate entity, the Morgan J. Daley Corp. (Daley), of which he was the president. Delbridge eventually siphoned over $1 million of investors' money into his personal funds. In 1981 the Commodities Futures Trading Commission obtained an order from the United States District Court in St. Paul, Minnesota, halting Delbridge's activities and freezing Daley's assets. Both plaintiffs and defendant believe that Delbridge is presently in the federal penitentiary in Lexington, Kentucky. Five of the six plaintiffs in this case are investors in the Daley Pools.[1] The

---

**1.** One of the named plaintiffs, Paul Ruby, now intends to withdraw as a named plaintiff because of potential antagonistic interests between him and other class members. The potential conflict results because Ruby not only personally invested in Daley Pools, he also sold interests

sixth plaintiff, Luke Baer, is the equity receiver appointed by the St. Paul court, and Baer is now administering the Daley Corporation. The plaintiffs now seek to certify a class action consisting of the 902 individuals who invested in the Daley Pools. The residences of the potential class members are as follows: Minnesota, 32; Iowa, 204 (mainly northwestern Iowa); Wisconsin, 96; Missouri, 32; and the remainder dispersed throughout the country. The sole defendant in this case is the Clayton Brokerage Co. of St. Louis, Missouri. Defendant is a broker which qualifies as a "futures commission merchant" under the Commodity Exchange Act. *See* 7 U.S.C. § 2.

In order to understand plaintiffs' claims against defendant, additional background on Delbridge's method of operation is required. Beginning in 1978, Delbridge placed commodity trades for the Daley Pools through a St. Louis broker, Ben McDougall. Brokers such as McDougall must place trades through a "futures commission merchant," and in April, 1979, McDougall changed affiliation and became an "associated person" with the Clayton Brokerage. *See* 7 U.S.C. § 2; 17 C.F.R. § 33.3. At this point, Delbridge moved the Daley Pools account over to the Clayton Brokerage.

As an "associated person," McDougall received a commission for the trades he placed through Clayton. Plaintiffs allege that McDougall improperly kicked back a substantial portion of the commissions he received from Clayton for Daley trades directly to Delbridge, thus diverting more than $230,000 from Daley to Delbridge. Plaintiffs allege, moreover, that Clayton provided McDougall with an office, various office equipment, and a compliance manual. In addition, assert plaintiffs, a representative from Clayton's compliance department reviewed McDougall's records six months after the association between McDougall and Clayton began.

Furthermore, plaintiffs allege that McDougall repeatedly made materially

in the Daley Pools to some of the other inves-

false statements to Joe Mouser, the main solicitor of investors for the Daley Pools, concerning the profitability of the Daley Pools. Plaintiffs also assert that McDougall made materially false statements to Daley Pools investors concerning the profitability of the pools. Plaintiffs draw upon these allegations to claim that defendant is liable to them in *respondeat superior* for McDougall's actions.

Plaintiffs also seek to hold defendant directly liable. In 1979 Delbridge moved his operations from St. Louis to Naples, New York, and plaintiffs contend that defendant provided him with a teletype receiver. In addition, plaintiffs claim that, in violation of the Commodity Exchange Act and its regulations, defendant did not require Delbridge to maintain a separate account for each individual Daley Pool. Based on these and other assertions, plaintiffs seek to hold defendant directly liable. Plaintiffs' complaint has 12 counts, but their direct liability theory seems to boil down to this: defendant either willfully assisted Delbridge or, at the very least, defendant's improper acts (*e.g.*, not requiring separate accounts) facilitated Delbridge's fraud. Plaintiffs rely on a variety of statutes and regulations, including section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5, 17 C.F.R. § 240.10b–5 and provisions of the Commodity Exchange Act which are analogous to section 10(b) and Rule 10b–5, *e.g.*, 7 U.S.C. § 6o.

The impetus for this lawsuit originated with equity receiver Baer. Baer contacted the law firm of Delaney & Solum to pursue the action. Subsequently, Baer also solicited investors to serve as named plaintiffs. Excluding Baer, the named plaintiffs in this action bear no financial responsibility for the costs of litigation. Baer, in his role as equity receiver, is solely responsible for the expenses involved in pursuing this lawsuit. Baer has set aside approximately $70,000 of Daley's funds in order to pursue this lawsuit.

tors.

Baer also sent letters to all investors in the Daley Pools asking them whether they ever had any contact with either McDougall or the Clayton Brokerage Co. Baer received only two or three responses to this inquiry.

Plaintiffs filed their action on April 18, 1984. On September 21, 1984, the Court denied defendant's motion to dismiss for failure to join necessary or indispensible parties, or in the alternative, to transfer venue to the United States District Court for the Eastern District of Missouri. Plaintiffs indicated at oral argument that the definition of the class which they seek to certify is as follows:

all persons who purchased limited partnership units or interests in the Daley Pools from January 1979 through October 1981 inclusive and who lost any or all of their investment.

Transcript of January 11, 1985 hearing at 3–5 (hereafter Tr.)

## DISCUSSION

 Fed.R.Civ.P. 23(a) sets forth four prerequisites to the maintenance of a class action:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

The party seeking to represent the class bears the burden of establishing that all four requirements are satisfied. *See, e.g., Smith v. Merchants & Farmers Bank of West Helena, Arkansas,* 574 F.2d 982, 983 (8th Cir.1978) (per curiam). Prior to the consideration of the criteria set forth under Rule 23(a), the Court must find that a precisely defined class exists, *Roman v. ESB, Inc.,* 550 F.2d 1343, 1348 (4th Cir. 1976) and also that the class representatives are members of the class. *East Texas Motor Freight System, Inc. v. Rodri-*

*guez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977) ("class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members"). These requirements are implicit prerequisites to the maintenance of an action under Rule 23.

If plaintiffs satisfy the implicit and explicit requirements of Rule 23(a), they then must demonstrate that the action sought to be certified falls within one of the three categories set forth in Rule 23(b). Plaintiffs must satisfy either (b)(1), (b)(2), or (b)(3), but plaintiffs do not specify which of the three subsections under (b) they are trying to satisfy. Nevertheless, the appropriate subsection would be (b)(3), *see* 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1781, at 87 (1972), which allows a class action to be maintained if the prerequisites of Rule 23(a) are satisfied, and

.... (3) the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution of or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

### Implicit Criteria

 In the present action, plaintiffs have precisely defined the class they wish to represent as all persons who invested in Daley Pools during a specific time frame and lost at least part of their investment. In addition, Baer has already been in contact with these individuals as he has sent

out mailings to all investors in the Daley Pools. Thus, the precisely defined class requirement is satisfied. *See Roman*, 550 F.2d at 1348.

■ The next implicit criterion of a class action is whether or not the named plaintiffs are members of the class they seek to represent. *See East Texas Motor*, 431 U.S. at 403, 97 S.Ct. at 1896. This prerequisite also entails considerations of whether the class representatives have any conflicting interests. *East Texas Motor*, 431 U.S. at 403, 97 S.Ct. at 1896. Ruby will be withdrawing as a named plaintiff because of potential antagonistic interests between him and other class members. Aside from Baer, the four remaining named plaintiffs are clearly members of the class they represent, as they are all investors in Daley Pools. Defendant strongly contests, however, that the remaining named plaintiff, Baer, can properly be a plaintiff in this action. This issue, which is one of the key questions in this motion, could be analyzed under the criterion of whether Baer is actually a member of the class he seeks to represent. Yet, defendant analyzes this issue under the Rule 23(a)(4) requirement of adequacy of representation, and the Court will as well.

## Numerosity—23(a)(1)

■ Rule 23(a)(1) permits a class action only when "the class is so numerous that joinder of all class members is impracticable." No definite standard exists as to what size class satisfies the requirement of Rule 23(a)(1). 7 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1762, at 592 (1972). Courts have, however, certified classes containing as few as 25, *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452, 463 (E.D.Pa. 1968) and 35 members, *Fidelis Corp. v. Litton Industries, Inc.*, 293 F.Supp. 164, 170 (S.D.N.Y.1968). The decision as to whether joinder is impracticable is essentially a subjective determination based on expediency and the inconvenience of trying individual suits. *Pabon v. McIntosh*, 546 F.Supp. 1328, 1333 (E.D.Pa.1982). Here,

the potential class consists of 902 investors located throughout the United States. Plaintiffs also point out that while losses suffered by potential class members range from $300 to $145,000, the most typical claim is one for approximately $2,000. Plaintiffs reason that because of the low dollar amounts involved in many claims, a class action is the only practical method in which to proceed. Finally, defendant does not challenge plaintiffs' satisfaction of the numerosity requirement, thus the Court concludes that plaintiffs have met it.

## Common questions of law or fact—23(a)(2)

■ Rule 23(a)(2) requires that there be questions of law or fact common to the class. This provision does not require a complete identity of legal claims. *Johnson v. American Credit Co. of Georgia*, 581 F.2d 526, 532 (5th Cir.1978). Moreover, the United States Court of Appeals for the Eighth Circuit has held on several occasions that factual differences are not fatal to the maintenance of a class action, as long as common questions of law exist. *E.g., Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir.1980); *Kirby v. Colony Furniture Co., Inc.*, 613 F.2d 696, 699–700 (8th Cir. 1980). Here, common questions of law and fact do exist. For instance, plaintiffs' claim that McDougall was an agent of defendant is central to plaintiffs' theory of recovery. Plaintiffs allege, *inter alia*, that McDougall improperly kicked back commissions to Delbridge. The proof and legal analysis necessary to decide whether or not McDougall was defendant's agent will be the same for all 902 members of the class. *See Ramsey v. Arata*, 406 F.Supp. 435, 437, 441 (N.D.Tex.1975) (relationship between perpetrator of fraud and trading company was a common issue supporting class certification). Thus, plaintiffs have satisfied this requirement.

■ A more stringent standard, however, is called for under Rule 23(b), which requires that common questions of law and fact *predominate* over questions affecting only individuals. The fact that some indi-

vidual questions will be involved in a case does not preclude the finding that common issues will predominate. *E.g., Wolfson v. Artisans Savings Bank,* 83 F.R.D. 547, 551 (D.Del.1979). Courts have not developed any quantitative or qualitative tests for determining whether common issues "predominate." 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1778, at 52 (1972).

▮ In addition to the question of McDougall's relationship to defendant, a number of other common issues exist. For instance, plaintiffs assert that defendant and its agents did not disclose material information (*e.g.* that the Daley Pools were suffering losses) in breach of an obligation they had to plaintiffs. Securities actions based on material omissions and failures to disclose meet the predominance requirement. *See Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969). Plaintiffs also assert that defendant's failure to require Delbridge to maintain separate accounts for the Daley Pools (allegedly in violation of the Commodity Exchange Act) facilitated Delbridge's fraud. In fact, plaintiffs assert that defendant aided and abetted Delbridge's fraud. The court in *Brennan v. Midwestern United Life Insurance Co.,* 259 F.Supp. 673, 684 (N.D. Ind.1966), *aff'd on other grounds,* 417 F.2d 147 (7th Cir.1969), *cert. denied,* 397 U.S. 989, 90 S.Ct. 1122, 25 L.Ed.2d 397 (1970), concluded that the issue of whether a defendant aided and abetted another's securities fraud provided a predominant common issue justifying certifying a class.

▮ Defendant, on the other hand, points to individual differences between potential class members in arguing that common questions do not predominate. Defendant points to plaintiffs' allegations of alleged misrepresentations by McDougall to Daley Pools investors, and concludes that the varying circumstances surrounding these occurrences of misrepresentations cause individual issues to predominate. A securities fraud action substantially based on oral misrepresentations usually

cannot be maintained as a class action. *E.g., Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 482 F.2d 880, 882 (5th Cir.1973); *McMerty v. Burtness,* 72 F.R.D. 450, 455 (D.Minn.1976). Yet, the mere fact that oral misrepresentations are among the transgressions alleged does not by itself preclude a finding that common questions predominate. *See, e.g., Brady v. Lac, Inc.,* 72 F.R.D. 22, 28–29 (S.D.N.Y.1976); *Ramsey,* 406 F.Supp. at 441; *Vernon J. Rockler & Co. v. Graphic Enterprises, Inc.,* 52 F.R.D. 335, 344–45 (D.Minn.1971). Defendant itself points out (in support of another argument) that only two or three of the Daley Pools investors have indicated to Baer that they had any direct contact with McDougall. Thus, oral misrepresentations do not appear destined for a central role at trial.

▮ Defendant also asserts that the need to apply a variety of statutes of limitations if a class were certified causes individual issues to predominate. (Because most of the securities laws involved in this case do not establish a statute of limitations, the Court would have to look to analogous state law, typically state blue sky acts.) The court in *Ramsey,* 406 F.Supp. at 441, dismissed this precise argument. (*Ramsey* involved a class of 900 defrauded investors scattered "virtually all over the world." *Ramsey,* 406 F.Supp. at 439.) As the *Ramsey* court stated, applying a variety of statutes of limitations is not especially complex. *Ramsey,* 406 F.Supp. at 441.

The individual issues involved in this case are minor when compared to the major question of defendant's responsibility for the acts of Delbridge and McDougall. In sum, the Court concludes that common issues of law and fact predominate in this lawsuit and plaintiffs have met this requirement of Rule 23(b).

**Typicality—23(a)(3)**

▮ Rule 23(a)(3) requires that the claims of the class representatives be typical of the claims of the class members. This requirement is met when the claims of

the named plaintiffs emanate from the same event or are based on the same legal theory as the claims of the class members. *Paxton v. Union National Bank,* 688 F.2d 552, 561–62 (8th Cir.1982), *cert. denied,* 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983). Another formulation of the Rule 23(a)(3) standard is that it requires named plaintiffs to show that other members of the class have the same or similar grievances as the named plaintiffs. *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 830 (8th Cir.), *cert. denied,* 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977).

■■■ Plaintiffs argue that the claims of class representatives are typical because their losses are commensurate with the losses suffered by the class members. This argument misses the point in that it does not focus on the similarity of the legal claims of the named plaintiffs compared with the class members. Defendant does address this relationship by noting that named plaintiffs Ruby and Lansing had individual contact with McDougall. Thus, these two named plaintiffs can assert that they relied on oral misrepresentations of McDougall while the remainder of the class members cannot. In fact, defendant points out that Ruby no longer intends to serve as a class representative.

The fact that Ruby will be withdrawing as a class representative, however, actually makes the claims of the remaining class representatives more typical of the entire class. Neither should the fact that one named plaintiff can assert allegations of oral misrepresentations while the remainder of the class cannot, defeat a class action in this case. Lansing's claims do not consist only of oral misrepresentations, he also has the same claims as the entire class concerning defendant's aiding or facilitating Delbridge's fraud, defendant's omissions, etc. (see discussion of common versus individual issues). The bulk of Lansing's claims are thus typical of the class. Finally, defendant does not even assert that the claims of the remaining class representatives are not typical of the class.[2] The Court concludes that plaintiffs have satisfied the typicality requirement.

**Adequacy of Representation—23(a)(4)**

■■■ The adequacy of representation requirement of Rule 23(a)(4) is of critical importance in every class action. *Bishop v. Committee on Professional Ethics, etc.,* 686 F.2d 1278, 1288 (8th Cir.1982). This criterion entails the concern over whether the class representatives and their counsel will competently and vigorously pursue the lawsuit and the concern that differences exist between the interests of the class representatives and the class. *E.g., Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 449 (3d Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978).

■■■ Plaintiffs are represented by experienced counsel who have previously been counsel in class action lawsuits, mainly dealing with securities litigation. Plaintiffs also point to their counsel's success in defeating defendant's motion to dismiss or transfer venue as an indication of their vigorous pursuit of this litigation. Thus, no doubt exists that plaintiffs' counsel are able to handle this action. *See, e.g., Philadelphia Electric Co.,* 43 F.R.D. at 457.

While defendant does not challenge the ability of plaintiffs' counsel, defendant does forcefully challenge the adequacy of the named plaintiffs as class representatives. Defendant notes that numerous courts have held that a named plaintiff's willingness and ability to pay the costs of litigation have a bearing on whether a court should certify a class action. *Citing, e.g., Apanewicz v. General Motors Corp.,* 80 F.R.D. 672 (E.D.Pa.1978). Defendant assails the adequacy of the five named plaintiffs (excluding Baer) on the grounds that they will not vigorously pursue the lawsuit or be responsible for litigation costs. At length, defendant points out that these five class representatives are not re-

---

**2.** Implicitly, defendant does assert that Baer's claims are not typical, but defendant attacks Baer's role in the lawsuit under its analysis of the next topic.

sponsible for the costs of the lawsuit.[3] Defendant also notes that Baer actually sought out these named plaintiffs. Thus, defendant concludes that these five named plaintiffs will not vigorously pursue the litigation.[4]

Yet, courts do not normally examine the financial responsibility of class representatives. *See Sanderson v. Winner,* 507 F.2d 477, 479–80 (10th Cir.1974) (per curiam), *cert. denied,* 421 U.S. 914, 95 S.Ct. 1573, 43 L.Ed.2d 780 (1975). Instances where a court will examine the financial resources of class representatives involve potential classes consisting of members numbering in the tens of thousands. *See Sanderson,* 507 F.2d at 480.[5] In such cases, the court is legitimately concerned about the class representatives' ability to bear the costs of sending adequate notice to class members. *Sanderson,* 507 F.2d at 479–80. By contrast, the potential class in the case at bar numbers slightly over 900. The Court is confident, moreover, that potential class members will receive adequate notice in the case at bar because Baer has set aside sufficient funds for notice and other litigation costs. Baer clearly is the driving force behind this lawsuit, and his presence ensures that this lawsuit will be vigorously pursued. Thus, as long as Baer is a class representative, the Court is not concerned about the financial responsibility of the other class representatives. *Cf. George v. Beneficial Finance Co. of Dallas,* 81 F.R.D. 4, 7 (N.D.Tex.1977) (plaintiffs with limited resources were nevertheless adequate representatives because legal foundation would finance suit).

Defendant argues, however, that Baer is not a proper member of the class and is thus not a proper class representative. Defendant notes that not all Daley Pools investors fall within the definition of the class, because some Daley Pools investors made their investments before Clayton began handling Daley accounts in 1979.[6] Defendant adds that Baer is withholding funds from all Daley Pools investors to finance litigation which will benefit only the investors within the class definition. Defendant concludes that this funding arrangement creates a conflict of interest for Baer which makes him an inadequate class representative.

Even if Baer distributed the money he earmarked for litigation to all the Daley Pools investors, the share each nonclass member would receive would be de minimus.[7] Baer obviously is seeking to recover money from defendant in order to pay the Daley Pools investors something to soften the blow of their losses. The Court does not question that Baer is attempting to aid the Daley Pools investors as much as possible. Furthermore, the issue before the

---

**3.** Plaintiffs have never tried to conceal this fact, as Baer's August 14, 1984 affidavit clearly states that Baer is totally responsible for litigation costs.

**4.** Defendant also makes the point that because named plaintiff Ruby sold interests in Daley Pools, he would have a divergent interest from the class. Ruby's withdrawal as a named plaintiff will cure this situation.

**5.** Defendant cited four cases for the proposition that a court should examine the willingness of class representatives to bear costs. Each of these cases involved extremely large classes: *National Auto Brokers Corp. v. General Motors Corp.,* 376 F.Supp. 620 (S.D.N.Y.1974) (42,000 class members), *aff'd on other grounds,* 572 F.2d 953 (2d Cir.1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979); *Ralston v. Volkswagenwerk, A.G.,* 61 F.R.D. 427 (W.D.Mo. 1973) (4.5 million class members); *P.D.Q. Inc.*

*of Miami v. Nissan Motor Corp. in U.S.A.,* 61 F.R.D. 372 (S.D.Fla.1973) (630,000 class members), *aff'd on other grounds,* 577 F.2d 910 (5th Cir.1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979); *Apanewicz v. General Motors Corp.,* 80 F.R.D. 672 (E.D.Pa.1978) (30,-000 class members).

**6.** Defendant asserts that 98 investors with claims totaling $383,000 are completely excluded from the class. Tr. at 31; Exh. B., and that 60 investors with claims totaling $388,000 are partially excluded from the class. Tr. at 32; Exh. C. (Total Daley Pool investor losses are $3,456,760.)

**7.** Baer reserved approximately $70,000 to pursue this lawsuit, and the total number of Daley Pool investors is 902. (Defendant states it's 895.) Thus, if Baer distributed those funds; each investor, class and nonclass member alike, would receive $77.60.

Court is not whether any conflict exists between Baer and nonclass members, but whether Baer has conflicting interests with the other members of the class.

 Defendant does argue, though, that as a matter of law, Baer cannot be a class representative. Defendant · states that Baer cannot assert claims of the individual investors and defendant concludes that Baer's interests as equity receiver conflict with the interests of the remaining class members (*i.e.*, the individual investors). "A receiver stands in the shoes of the corporation and can assert only those claims which the corporation could have asserted." *Lank v. New York Stock Exchange,* 548 F.2d 61, 67 (2d Cir.1977). Where a receiver represents creditors as well as the corporation, though, the receiver can sue on behalf of the former as well. *Lank,* 548 F.2d at 67. Here, the October 13, 1981 order appointing Baer as receiver does not explicitly grant Baer the authority to bring suit on behalf of the creditors of Daley (*i.e.*, the Daley Pools investors), but the order provides that Baer should act to prevent irreparable harm to the Daley Pools investors. The order also directs Baer to administer the assets of Daley and the assets of the Daley Pools investors. Plaintiffs suggest that the order thus allows Baer to bring suit for claims of the Daley Pools investors.

Defendant, however, takes the position that Baer cannot assert claims of the pool investors. Defendant relies heavily on *Boston Trading Group, Inc. v. First Pullen Commodity Services, Inc.,* [1982–4] Comm.Fut.L.Rep. (CCH) ¶ 21,925 (D.Mass. 1983). In *Boston Trading Group,* a court had appointed a temporary equity receiver for two corporations which, like Daley, had operated commodities pools. The receiver attempted to sue a brokerage firm, like defendant, which had cleared trades for the two corporations. (The receiver did not attempt to certify a class.) The court hearing the suit against the brokerage firm concluded that the receiver could not maintain the action because he was asserting the rights of the individual pool investors.

The court reasoned that the pools were not assets of the corporations, but were property of individual investors. *Boston Trading Group,* at 27,993. Other case law supports the proposition that a receiver cannot assert the claims of individual investors. *Lank,* 548 F.2d at 67; *In re Duplan Corp.,* 444 F.Supp. 952, 956 (S.D.N.Y.), *aff'd mem.,* 578 F.2d 1367 (2d Cir.1978); *cf., Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972) (bankruptcy trustee could not sue indenture trustee on behalf of debenture holders).

 Even though a receiver cannot assert claims which belong to individual investors, a receiver can assert claims of the corporation in certain instances where the corporation could not. *E.g., Lank v. New York Stock Exchange,* 405 F.Supp. 1031, 1037 (S.D.N.Y.1975), *rev'd on other grounds,* 548 F.2d 61 (2d Cir.1977); *Bonhiver v. Graff,* 311 Minn. 111, 248 N.W.2d 291, 296 (1976). A receiver represents the rights of creditors and is not bound by a former corporate officer's fraud. *Bonhiver,* 248 N.W.2d at 296. For instance, if Delbridge were still president of Daley, Daley (*i.e.,* the corporation) could not sue Clayton Brokerage for the latter's alleged negligence in allowing Delbridge to carry out the fraud. By contrast, assuming Clayton owed a duty to Daley, Baer as equity receiver could assert such a claim against Clayton. *See Bonhiver,* 248 N.W.2d at 296 (receiver of insurance company could maintain action against accounting firm for its negligence which allowed former officers of the insurance company to commit fraud).

· Here, Baer seeks to assert claims of Daley based upon the alleged kickbacks from McDougall to Delbridge. As a member of the class action, Baer would be asserting the claims of Daley while the other class members would be asserting their individual claims as investors against defendant. At this juncture, defendant might have argued that Baer's claims are thus not typical of the claims of the class members, but the Court would have rejected this argument because Baer's claims still amount to griev-

ances similar to claims of the class members. *See Donaldson,* 554 F.2d at 830.

Defendant does argue that Baer's interests as a receiver differ from the interests of the class members to the extent that Baer cannot adequately represent the investors. The *Boston Trading Group* court explicitly held that the interests of the receiver were inconsistent with the interests of the investors. *Boston Trading Group,* at 27,994. Defendant reasons that just as in *Boston Trading Group,* Baer's interests are divergent from the interests of the individual investors because Baer represents the entity which directly damaged the investors.

Yet defendant's argument implies that Baer would somehow seek to defend the actions of Delbridge and Daley. Baer's sole pursue, however, is to generate funds to disburse to the defrauded creditors. In fact, a "receiver represents the rights of creditors" of the corporation. *Bonhiver,* 248 N.W.2d at 296, *but cf. Lank,* 405 F.Supp. at 1037 (receiver only represents rights of creditors in that receiver is not barred by the fraudulent acts of corporate officers in pursuing corporate claims). Even in *Boston Trading Group,* the court noted that one reason that the receiver could not assert the claims of investors was that the receiver had not shown that no other method to protect the investors was possible. *Boston Trading Group,* at 27,-994. The court then suggested that a class action might be appropriate. *Boston Trading Group,* at 27,994.

■ In conclusion, the fact that the receiver could not himself bring the claims of individual investors does not necessarily require the conclusion that the receiver's interests (*i.e.,* the claims of the corporation) are so different from the investor's interests that the receiver could not serve as one of the class representatives. If conflicts appear to develop during the course of this litigation, the Court could direct a notice to class members inquiring whether they consider their representation fair and adequate, Rule 23(d)(2); could allow other plaintiffs to become named plaintiffs, Rule 23(d)(2); or could decertify the class, Rule

23(c)(1); *Horton v. Goose Creek Independent School District,* 690 F.2d 470, 487 (5th Cir.1982), *cert. denied,* 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983).

The Court concludes that all the class representatives have satisfied the adequacy of representation requirement.

### Rule 23(b)(3)

■ Rule 23(b)(3)'s requirement of a predominance of common issues of law and fact has already been discussed. In addition, Rule 23(b)(3) requires that a class action be superior to other methods of handling litigation. Defendant argues that the proposed class action would be inappropriate because of defendant's right to mitigation of damages. Defendant states that it has the right to request that Baer use the $70,000 reserved for litigation expenses to mitigate any damages for which defendant is found liable. Defendant states that Baer should use this fund to mitigate the damages of all Daley Pools investors, not just those investors within the class. Defendant forgets, however, that (except for Ruby) the class contains *all* Daley Pools investors who potentially have individual claims against defendant, *i.e.,* individuals who invested in Daley Pools from January, 1979 through October, 1981, inclusive, and who lost all or part of their investment. Thus, defendant cannot complain about the damages of nonclass members not being mitigated because nonclass members do not have claims against defendant.

A factor supporting the superiority of a class action, moreover, is that without such a procedure, the issues in this controversy probably would never be resolved. Virtually all of the individual investors do not have a sufficient stake in litigating this case to pursue the action, but a class action will allow the case to proceed. *See, e.g., Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 338, 100 S.Ct. 1166, 1174, 63 L.Ed.2d 427 (1980); *Green v. Wolf Corporation,* 406 F.2d 291, 296–97 (2d Cir. 1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

■ Only two of the subpoints under Rule 23(b)(3) deserve note at this juncture, as the others have been dealt with implicit-

ly. Rule 23(b)(3)(B) states that the extent of existing litigation concerning the controversy should be considered. Here, no other litigation concerning this controversy exists, a fact which favors class certification. Finally, Rule 23(b)(3)(D) indicates that the difficulty of managing a class is a factor for the Court to weigh. Baer has already identified and contacted the potential class members, therefore, sending notice to class members (as required by Rule 23(c)(2)) should not present a problem. *See In re Corrugated Container Antitrust Litigation,* 80 F.R.D. 244, 253 (S.D.Tex.1978). The Court concludes that a class action is superior to other available methods of adjudication in this case.

Based on the foregoing, IT IS ORDERED that the following class be certified:

> all persons who purchased limited partnership units or interests in the Daley Pools from January 1979 through October 1981 inclusive and who lost any or all of their investment.

IT IS FURTHER ORDERED that within 21 days from the filing of this order, plaintiffs submit to the Court a proposed notice to the class members. Prior to submitting the proposed notice, plaintiffs shall confer with defendant regarding the contents of the proposed notice.