Morris ROTHSTEIN et al., Plaintiffs,

v.

SEIDMAN & SEIDMAN et al., Defendants and Third-Party Plaintiffs,

v.

AXELROD & CO. et al., Third-Party Defendants.

Nos. 73 Civ. 2127, 73 Civ. 2129 to 73 Civ. 2132.

United States District Court, S. D. New York.

Feb. 27, 1976.

Hawkins, Delafield & Wood, New York City, for plaintiffs Morris Rothstein, Jack Rothstein, Joel Rothstein, Saul Golkin and Sheila Barschi; Clarence Fried, John F. Triggs, New York City, of counsel.

Cahill, Gordon & Reindel, New York City, for defendant Seidman & Seidman; William E. Hegarty, John R. Vaughan, Wayne Schneider, Joseph W. Muccia, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

The defendant Seidman and Seidman ("Seidman") moves to dismiss various claims of amended complaints in five related actions [1] upon the ground that they

---

1. *Morris Rothstein v. Seidman & Seidman,* 73 Civ. 2127; *Jack Rothstein v. Seidman & Seidman,* 73 Civ. 2129; *Golkin v. Seidman & Seidman,* 73 Civ. 2130; *Barschi v. Seidman & Seidman,* 73 Civ. 2131; *Joel Rothstein v. Seidman & Seidman,* 73 Civ. 2132. The complaints differ only in their ad damnums and the dates plaintiffs acquired their respective interests in Axelrod & Co.

either fail to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or fail to plead fraud with particularity as required by Rule 9(b), or are redundant.

These five actions (as well as five other actions not now before the court) were spawned by the 1971 failure of Axelrod & Co. ("Axelrod"), a securities broker-dealer and a former member of the New York Stock Exchange ("NYSE"). Seidman is an accounting firm that conducted "surprise audits" of Axelrod in 1970 and 1971, pursuant to NYSE Rule 418.[2] The five plaintiffs are limited partners or subordinated lenders of Axelrod or both. Each claims in substance that Seidman improperly conducted its 1970 and 1971 audits of Axelrod by failing to analyze certain books and records and by ignoring substantial evidence of irregularities or fraud committed by Axelrod's managing partners. Plaintiffs allege that they suffered loss as a result of Seidman's issuance and certification of materially false financial statements and its failure to disclose the fraud committed by the managing partners or Axelrod's resultant perilous financial condition. Seidman denies these allegations of professional dereliction and claims that the plaintiffs were de facto general partners and participated in the same fraudulent conduct that they charge Seidman should have discovered.

Each plaintiff filed an amended complaint following this court's grant on June 10, 1975 of partial summary judgment to defendant on plaintiffs' claims with respect to the 1971 audit. The motion was granted since it was undisputed that all five plaintiffs had invested in Axelrod prior to Seidman's September 1971 issuance of reports based on its 1971 audit. Further, plaintiffs were bound not to withdraw their investments in Axelrod after its liquidation began in September 1971 until after all firm customers and general creditors had been satisfied. Thus, Seidman's reports could not in any way have caused plaintiffs' losses and plaintiffs had made no purchase or sale "in connection with" Seidman's alleged conduct, and therefore they lacked standing to sue under Rule 10b–5.[3] Plaintiffs were given leave to serve amended complaints and now reassert their claims as to the 1971 audit upon a different theory, as well as add other claims.

## THE MOTION TO DISMISS THE FIRST CLAIM OF BARSCHI AND JOEL ROTHSTEIN

The first claim of all of the plaintiffs is brought under Rule 10b–5 and charges that Seidman made various fraudulent misstatements and omissions in connection with its 1970 audit of Axelrod upon which plaintiffs relied in acquiring and continuing their limited partnership interests in Axelrod. The misstatements and omissions are alleged to be reflected in Seidman's 1970 audit documents, which were certified on December 11, 1970. Seidman contends that, since the complaints of Barschi and Joel Rothstein allege that they acquired these interests in Axelrod in November and October 1970, respectively, prior to the issuance of the 1970 audit documents, they could not have relied upon those documents in

2. Rule 418, since amended, then provided:

"Each member organization doing any business with others than members and member organizations is required to have an annual audit of its affairs conducted, in accordance with the audit regulations of the Exchange by independent public accountants at a date to be selected by such accountants without prior notice to the member organization, and to have such accountants prepare an answer to the financial questionnaire of the Exchange based upon such audit."

3. 17 C.F.R. § 240.10b–5 (1975). *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). *See also Bolger v. Laventhol, Krekstein, Horwath & Horwath*, 381 F.Supp. 260, 265–67 (S.D.N.Y.1974).

making such investments.[4] Hence, the misstatements and omissions allegedly contained therein were not made "in connection with" plaintiffs' purchase or sale of any security and plaintiffs lack standing under the *Birnbaum* rule.[5]

However, Rothstein and Barschi urge that they satisfy the *Birnbaum* requirement because in March 1971, relying upon the 1970 financial statements certified by Seidman, they signed an agreement permitting their loans to remain outstanding and thereby "reinvested" in Axelrod; that this transaction was a repurchase of their interests. Further, they contend that in July 1971 they again continued their status as limited partners by signing amendments to the partnership agreement that were necessitated, at least in part, by a change in the membership of the partnership. Plaintiffs contend that both situations were "purchases" or "sales" of securities, and that defendant committed fraud in connection therewith.

Irrespective of the merits of this "reinvestment" theory it has not been properly pleaded. The amended complaints of Joel Rothstein and Barschi refer merely to their having become investors in Axelrod since October and November 1970, and there is no mention of the March or July 1971 transactions beyond the vague allegation that the plaintiffs "loaned money to Axelrod and permitted such loan to remain outstanding."

In any event, plaintiffs' reliance upon those transactions is without substance. The March 1971 agreement to which Barschi and Joel Rothstein were parties identifies them as limited partners of Axelrod and recites that "the

parties have been and are doing business as a Limited Partnership under the firm name of Axelrod & Co. . . . and propose to continue business under that name . . . . The parties shall continue their Limited Partnership . . . ." The agreement on its face, insofar as Barschi and Joel Rothstein are concerned, represents nothing more than a continuation of the status quo. Similarly, the July 1971 agreement refers simply to the withdrawal of certain general and limited partners and the addition of two new general partners. Neither the character nor the amount of Barschi and Joel Rothstein's interests in Axelrod were changed in any way by this reaffirmation of the continuance of the partnership. Although the terms "purchase" and "sale" are broadly construed under the Securities Exchange Act of 1934,[6] here there has been no alteration of the nature and terms of plaintiffs' status in Axelrod or their respective investments.[7] Rothstein and Barschi were in exactly the same position prior to the March and July agreements as they were after them.[8] Their participation in the agreements therefore did not constitute "purchases" or "sales," and the *Birnbaum* rule bars their cause. Accordingly, the motion to dismiss the first claim of Barschi and Joel Rothstein is granted.

## THE MOTION TO DISMISS THE SECOND CLAIM OF ALL PLAINTIFFS

The second claim of each of the five amended complaints once again attempts to base liability on the 1971 audit. Plaintiffs allege that in the course of the

---

4. For the purposes of this motion Siedman does not contest that the interests in Axelrod acquired by Rothstein and Barschi were "securities." *See Hirsch v. duPont*, 396 F.Supp. 1214, 1227–28 (S.D.N.Y.1975); *NYSE v. Sloan*, 394 F.Supp. 1303, 1311–12 (S.D.N.Y.1975).

5. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952).

6. *See Vine v. Beneficial Finance Co.*, 374 F.2d 627, 634 (2d Cir.), *cert. denied*, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967).

7. *See Ingenito v. Bermec Corp.*, 376 F.Supp. 1154, 1181 (S.D.N.Y.1974).

8. *Cf. In re Penn Central Securities Litigation*, 347 F.Supp. 1327, 1338 (E.D.Pa.1972), *modified*, 357 F.Supp. 869 (E.D.Pa.1973), *aff'd*, 494 F.2d 528 (3d Cir. 1974).

audit Seidman uncovered "substantial evidence" of "gross fraud" by the managing partners of Axelrod and learned that the firm was in a highly unstable financial condition but failed to report these derelictions to interested parties. Specifically, plaintiffs charge that two managing partners and one subordinated lender withdrew $1,090,000 from Axelrod in certified checks on August 2, 1971, while the audit was taking place; that Axelrod issued false and fraudulent profit and loss statements between January 1, 1971 and July 30, 1971; and that various other sums were improperly diverted by Axelrod's managing partners. It is alleged that each of these derelictions was "determinable from a review of the firm's books and records" and that defendant's failure to make immediate disclosure of these matters denied to plaintiffs and other investors the opportunity to take timely "corrective action" which would have prevented further dissipation of the firm's assets and otherwise to protect their interests.

Plaintiffs seek to impose liability upon Seidman on the theory that it was under a duty to notify "someone at Axelrod, if not the New York Stock Exchange" *immediately* upon its discovery of the alleged irregularities and even prior to the rendering of its report.

Plaintiffs would ground the duty of an auditor to make disclosures during the progress of an audit on section 6 of the Securities Exchange Act of 1934 [9] and on a Special Instruction accompanying New York Stock Exchange Rule 417. Section 6 of the Act, together with section 19,[10] creates a system of self-regulation whereby registered national securities exchanges may adopt and enforce rules consistent with the Act and designed, in general, to protect investors and the public interest. NYSE Special Instruction 417.11, appearing in the Supplemen-

tary Material accompanying NYSE Rule 417, provides:

> "Any condition disclosed by the audit that would cause the capital or net worth of the member or member organization to be less than that prescribed by the Board of Directors shall be reported to the Exchange by the member or member organization immediately upon the ascertainment of such facts." [11]

■ Leaving aside the question whether this "Special Instruction" may be fully deemed a New York Stock Exchange "rule," [12] the instruction upon its face casts a duty of immediate disclosure only upon the member firm—here Axelrod. Plaintiffs' contentions that "Seidman had a duty to notify someone at Axelrod . . . so that they [Axelrod] in turn could notify the NYSE," and that Seidman should have notified the NYSE directly because Axelrod's management was the "chief culprit" and could not be expected to contact the Exchange, disregards the specific language of the instruction. It is directed to Exchange members. The instruction makes no reference to nor imposes any duty upon an auditing accountant from which a private right to damages could be implied. Nothing in the rule suggests that the Stock Exchange intended to impose upon an accountant conducting such an audit of a member firm any duty beyond that already imposed by the federal securities laws—even assuming, of course, that the Exchange had the power to impose rules upon nonmembers. Plaintiffs ask the court to build inference upon inference in order to sustain their claim of an implied right of action and to ignore entirely the serious questions whether a Special Instruction of the NYSE can subject a nonmember to liability to third parties and whether the *Birnbaum* purchaser-seller standing re-

**9.**  15 U.S.C. § 78f.

**10.**  15 U.S.C. § 78s.

**11.**  It is conceded that Seidman's 1971 audit disclosed that Axelrod had a net capital defi-

ciency, although plaintiffs' second claim lacks such an allegation.

**12.**  *See DeRenzis v. Levy*, 297 F.Supp. 998, 1000–01 (S.D.N.Y.1969).

quirement would remain a limitation upon their supposed right of action.[13]

■ The claim of a private right of action based upon a violation of a stock exchange rule may be sustained when it appears that the rule was intended to play an integral and supplementary role in SEC regulation.[14] Here there is not the slightest basis for any such contention; indeed the contrary appears. Since the argument of this motion, the SEC has amended SEC Rule 17a–5 to require for the first time that an accountant conducting an audit of a broker-dealer make certain interim disclosures of material inadequacies discovered during the course of the audit.[15] The amendment is part of a broad program to revise and consolidate the reporting requirements of the Securities Exchange Act. The program was the result of several years study and consideration by the SEC and various committees appointed by it. Thus there can be no contention that the amendment codifies a preexisting implied duty rather than creates a new one. This is underscored by the fact that although the rule and the new reporting system became effective January 1, 1976, the SEC has requested further comments thereon by March 31, 1976. The Commission intends "to continue modifying and updating the financial and operational reporting systems to keep pace with the changing securities industry." [16] In short, plaintiffs have failed to sustain the heavy burden required for the implication of federal liability based upon an alleged violation of the Exchange "Special Instruction." [17]

■ The motion to dismiss the second claim of each amended complaint is granted. Since each plaintiff has withdrawn his third claim, the amended com-plaints of Joel Rothstein and Barschi fail to state any federal claim. Accordingly, the court lacks pendent jurisdiction over their remaining common law claims and their amended complaints must be dismissed in their entirety.[18]

## THE MOTION TO STRIKE OR DISMISS CLAIMS FIVE AND SEVEN OF EACH PLAINTIFF

Seidman moves to strike plaintiffs' fifth and seventh claims under Rule 12(f) of the Federal Rules of Civil Procedure, contending that they repeat the substance of plaintiffs' fourth claim. In the alternative, Seidman moves to dismiss the fifth and seventh claims for failure to plead fraud with sufficient particularity.

■ Plaintiffs' fourth claim, as to which no motion has been made, sounds in common law negligence whereas the fifth claim alleges common law fraud. The fifth claim therefore is not redundant. Since it incorporates all previous allegations, which are quite detailed, it suffices under Rule 9(b) as well. Thus, the motion to strike or dismiss plaintiffs' fifth claim is denied.

Plaintiffs describe their seventh claim as a state common law claim somewhat similar to their second federal claim, dismissed above. They alleged that "had the audits, statements and answers prepared by defendant been properly conducted as required by defendant's engagement, the false and fraudulent practices and the chaotic conditions of Axelrod's operations would have been timely brought to the attention of plaintiff[s] and the other limited partners and subordinated lenders of Axelrod and appropriate corrective action [would have]

---

**13.** *Cf. Myers v. American Leisure Time Enterp., Inc.,* 402 F.Supp. 213 (S.D.N.Y.1975).

**14.** *Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178 (2d Cir.), *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966); *Starkman v. Seroussi,* 377 F.Supp. 518, 524 (S.D.N.Y.1974).

**15.** 40 Fed.Reg. 59706 at 59716 (December 30, 1975).

**16.** 40 Fed.Reg. at 59707.

**17.** *Cf. Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178 (2d Cir.), *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966).

**18.** *United Mine Workers v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218, 228 (1966). *See also Molasky v. Garfinkle,* 380 F.Supp. 549, 553 (S.D.N.Y.1974).

been taken to enable Axelrod to continue in business." [19] The only new allegation pertaining to plaintiffs' damage recites that, "[a]s a result of the defendant's wanton and reckless, negligent and fraudulent acts and omissions . . . *the business of Axelrod* has been destroyed and rendered valueless . . ." [20]

Since the essence of plaintiffs' claim is a loss of their investments because of acts resulting in the dissipation of Axelrod's assets, it falls squarely within the rule of *Sloan v. Clark*.[21] Plaintiffs there were limited partners of Ira Haupt & Co., which went into bankruptcy because of the alleged tortious conduct of the American Express Company in issuing false warehouse receipts. Because the alleged wrong was done to the partnership as an entity, not to the individual partners, and since Haupt's trustee in bankruptcy had already filed suit on behalf of all of Haupt's creditors, the New York Court of Appeals held that the limited partners lacked capacity to sue and the complaints failed to state a cause of action.

■ Exactly the same situation is presented here. Plaintiffs claim to have suffered loss only by virtue of the destruction of Axelrod's business, which could have been avoided by Seidman's timely disclosure of fraud perpetrated on Axelrod by the managing partners thereof. Any wrong was done to Axelrod, and Axelrod's liquidator has sued Seidman in the New York State Supreme Court upon substantially the same charges alleged here with respect to the 1970 and 1971 audits. As the New York Court in *Sloan* noted, to permit this suit by the limited partners might well harm the rights of Axelrod's other partners and creditors.

Defendant's motion to dismiss the seventh claim of the amended complaints is granted.[22]

## THE MOTION TO DISMISS THE SIXTH CLAIM OF EACH PLAINTIFF

■ Plaintiffs' sixth claim demands exemplary damages at common law. It incorporates all previous allegations and charges that Seidman's various acts and omissions "were malicious and wilful, wanton and reckless, and calculated to deceive and defraud plaintiff[s] and others." In the light of other allegations in the complaint which attribute, with respect to some items, mere negligence to Seidman, it is doubtful that plaintiffs can sustain their broad charge to justify punitive damages; however, this is a matter which cannot be disposed of in an attack upon the pleadings but must await trial.

The motion to dismiss the sixth claim of each complaint is denied.

19. Complaint ¶ 60.

20. Complaint ¶ 62 (emphasis added).

21. 18 N.Y.2d 570, 277 N.Y.S.2d 411, 223 N.E.2d 893 (1966).

22. Plaintiffs' objection that this motion is "unseasonable" because it could and should have been brought with respect to the original complaint, which was identical to the amended complaint so far as is relevant to this branch of the motion, is without merit. Apart from the fact that the filing of the amended complaint subjects it to all Rules of the Federal Rules of Civil Procedure, defendant could have raised plaintiffs' failure to state a claim at trial even had the original complaint not been superseded. *See* Fed.R.Civ.P. 12(g), 12(h)(2).