Margaret Mary McDonnell MURPHY,
Plaintiff-Appellant,

v.

McDONNELL & CO., INCORPORATED
and the New York Stock Exchange by
Robert W. Haack, President, Defendants-Appellees.

James F. McDONNELL, Jr., Individually,
as Trustee under the Will of James F.
McDonnell and as Executor of the Estate
of Anna M. McDonnell, and Charles E.
McDonnell, as Executor of the Estate of
Anna M. McDonnell, Plaintiffs-Appellants,

v.

The NEW YORK STOCK EXCHANGE by
Robert W. Haack et al.,
Defendants-Appellees.

No. 471, Docket 76–7278.

United States Court of Appeals,
Second Circuit.

Argued Jan. 26, 1977.

Decided April 14, 1977.

Maxwell E. Cox, New York City (Walter H. Beebe, Marc J. Adelsohn and Davis & Cox, New York City, of counsel), for plaintiffs-appellants Margaret Mary McDonnell Murphy, James F. McDonnell, Jr. and Charles E. McDonnell.

Russell E. Brooks, New York City (Toni C. Lichstein, William C. Owens, Jr. and Milbank, Tweed, Hadley & McCloy, New York City, of counsel), for defendant-appellee New York Stock Exchange, Inc.

R. Scott Greathead, New York City (John J. Loflin and Lord, Day & Lord, New York City, of counsel), for defendant-appellee American Stock Exchange, Inc.

Mark Walfish, New York City (Proskauer, Rose, Goetz & Mendelsohn, New York City, of counsel), for defendant-appellee McDonnell & Co., Inc.

Before ANDERSON, OAKES and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Southern District of New York (Owen, J.), entered in favor of the defendants in two consolidated cases. Both cases, based on federal securities laws, arose out of the financial failure of McDonnell & Co., Inc., a member of the New York and American Stock Exchanges (NYSE and Amex). Specifically, they arose out of McDonnell & Co.'s attempts in late 1968 and early 1969 to raise additional net capital needed to comply with the NYSE's net capital rule, and the firm's subsequent demise in March 1970.

In *Murphy v. McDonnell & Co., Inc.*, Margaret Mary McDonnell Murphy alleged that she made subordinated loans of securities to the brokerage firm in January 1969 at the behest of T. Murray McDonnell, her brother and president of the firm. The gravamen of her claim was that the brokerage firm, in inducing her to make these loans, failed fully to disclose the financial condition of the firm in violation of Rule 10b–5. She also claimed that the NYSE was responsible for this fraud, and that the NYSE violated Section 6 of the Exchange Act, 15 U.S.C. § 78f, by failing properly to regulate McDonnell.

In *McDonnell, et al. v. New York Stock Exchange, et al.*, Anna McDonnell, the mother of the firm president,[1] and her son, James F. McDonnell, Jr., asserted similar claims against the brokerage firm, the NYSE, and the Amex. In addition, James F. McDonnell, Jr., brought suit against the NYSE and the Amex as trustee on behalf of a trust created under his father's will. The claim was that in December 1968 the trustees were fraudulently induced to exchange a matured McDonnell & Co. debenture for a new subordinated debenture, thus maintaining their capital investment in the firm. The trust alleged that, in connection with this transaction, both Exchanges aided and abetted a violation of Rule 10b–5, and breached their regulatory duties under Section 6.

The District Court directed a verdict in favor of both Exchanges on all of the 10b–5 claims. Judge Owen ruled that the Exchanges could not be held liable as participants in or as aiders and abettors of the alleged frauds, nor as controlling persons. He held that the Exchanges had neither knowledge nor reason to suspect that any fraudulent representations were being made. Judge Owen also concluded that the Exchanges were under no Section 10(b) duty of disclosure stemming from any regulatory duty imposed by Section 6.

The District Court also directed a verdict in favor of the Amex on the Section 6 claims, apparently on the theory that the NYSE had the exclusive duty to supervise and regulate brokerage firms which are members of both Exchanges. Judge Owen submitted the Section 6 claims against the NYSE to the jury, which returned a verdict for the Exchange.

The jury also returned a verdict for McDonnell & Co. on the fraud claims of plaintiff Anna M. McDonnell. However, on their Rule 10b–5 claims against the brokerage firm, it returned a verdict for plaintiff Margaret Mary McDonnell Murphy and the trustees.

On appeal, plaintiffs argue that the district court should have directed a verdict or entered judgment notwithstanding the verdict against the Exchanges. They seek at the very least a new trial, on the grounds that the directed verdict in favor of Amex on the Section 6 claim was improper and that the court's charge to the jury on the Section 6 claim against the NYSE was improper. Plaintiff Anna M. McDonnell also seeks a new trial on her fraud claims against McDonnell & Co. on the ground that the district court erroneously admitted and excluded certain evidence.

We affirm the judgment of the district court in all respects.

■ On the claims based upon Section 6 of the Exchange Act, we need not reach the

---

1. Plaintiff Anna McDonnell has since died and Charles E. McDonnell, her son and executor of her estate, has been substituted as a party to this appeal.

issues decided by the district court, for our recent decisions in *Lank v. New York Stock Exchange*, 548 F.2d 61 (2d Cir. 1977) and *Arneil v. Ramsey*, 550 F.2d 774 (2d Cir. 1977), handed down during the pendency of this appeal, are dispositive. In *Lank*, we held that the receiver of a defunct brokerage house could not assert a claim under Section 6, because that provision was designed to afford protection only to *public* investors. 548 F.2d at 66. Moreover, in *Arneil* we held that "those who invest in a member of a securities exchange, whether as limited partners, subordinated lender or purchasers of other than its publicly traded securities, have no claim under Section 6 . . . ." 550 F.2d at 783. As subordinated lenders, therefore, none of the plaintiffs herein may assert a Section 6 claim.

■ On the 10b–5 claims asserted against the Exchanges, we agree with the district court that there was no evidence to support the imposition of 10b–5 liability. The Exchanges themselves made no misrepresentations to the plaintiffs. Liability under 10b–5 therefore could be based only upon breach of some duty to disclose. Ordinarily, however, those who, like the Exchange, are not parties to any purchase or sale, are not under a duty to disclose unless they are aiders and abettors or have themselves substantially participated in some concealment. *See Lanza v. Drexel & Co.*, 479 F.2d 1277 (2d Cir. 1973) (*en banc*); *Wessel v. Buhler*, 437 F.2d 279 (9th Cir. 1971). Here it is clear that the Exchange did not know of or have any reason to suspect any fraud on the part of the brokerage firm or its officers. As we recently wrote in *Hirsch v. duPont*, 553 F.2d 750, at 759 (2d Cir. 1977): "Knowledge of the fraud, and not merely the undisclosed material facts, is indispensable" to create a duty to disclose in these circumstances.

■ Plaintiffs argue, however, that the Exchange was under a duty to disclose its information concerning McDonnell's precarious financial condition because it "actively participated" in McDonnell's efforts to raise the capital it needed. We do not agree. First, we do not think that the concept of "aider and abettor" liability can be stretched to encompass the situation in which there is in fact no active participation in the transactions, *see Lanza v. Drexel & Co., supra*, at 1302.[2] As the court held in *Weinberger v. New York Stock Exchange*, 403 F.Supp. 1020, 1026 (S.D.N.Y.1975), the Exchange's approval of plaintiff's investment as a limited partner in a member firm, after checking his moral and ethical qualifications, was not, in itself, sufficient participation in the transaction to create any duty of disclosure under Section 10(b) and Rule 10b–5. And *cf. Lanza v. Drexel & Co., supra* (directors without knowledge not participants in failure to disclose).

The plaintiffs maintain that the Exchange "participated" in the transactions, as a matter of law, because of its duties under Section 6, and because the Exchange was, in fact, pressing McDonnell to satisfy the net capital requirements.

■ We do not believe that the activities of the Exchange in this case constitute "participation" under Section 10(b) and Rule 10b–5. *Cf. Hirsch v. duPont, supra.* We agree with the district court that the potential liability of the Exchange under Section 6 to *public* investors should constitute the limit of the Exchange's duties under that provision. *See Weinberger v. New York Stock Exchange, supra*, 403 F.Supp. at 1026. And we see no justification beyond that for imposing on the Exchange a 10b–5 liability based upon an alleged duty to speak which we have found not to exist under Section 6. If we imposed such a duty, the practical effect would be to require the Exchange to suspend a firm im-

2. In *Fischer v. New York Stock Exchange*, 408 F.Supp. 745 (S.D.N.Y.1976), upon which plaintiffs rely, the complaint alleged more than mere nondisclosure by the Exchange. It charged that the Exchange "agreed with its members to conceal from investors and its members facts derogatory to the members' reputations," *see id.* at 753, and that an officer of the Exchange personally engaged in the negotiations with those who made subordinated loans to the brokerage firm, *id.* at 751.

mediately upon finding it in default of the net capital rule. For the risk that liability might be imposed on the Exchange itself if the member firm made fraudulent representations in soliciting additional capital, *without the knowledge of the Exchange*, would be too great to allow the Exchange to suffer a delay that might enure to the benefit of the customers of the firm and to the stability of the financial community. A duty to disclose would in such case amount to an imperative to close the firm.

We do not here deal with a situation where the Exchange has made an affirmative misrepresentation. We simply hold that, contrary to the situation in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), it has no duty to come forward, *sua sponte*, with notes of warning to sophisticated lenders who have not sought its advice. Finally, we have "serious doubt," *see Arneil v. Ramsey, supra*, 550 F.2d 783, n.11, whether the *scienter* requirement of Rule 10b–5, *see Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), would be satisfied merely by the failure of the Exchange to disclose the results of its investigations when it is not asked for advice or for disclosure of the financial condition of the particular firm. *See Hirsch v. duPont, supra.*

We also reject plaintiff's apparent contention that, as a concomitant of its supervisory duties, the Exchange was under an obligation to *insure* that *McDonnell* disclosed to its investors all material adverse facts and refrained from any misrepresentations. *See Lanza v. Drexel & Co., supra*, at 1302, *citing Levine v. SEC*, 436 F.2d 88, 90 (2d Cir. 1971). In this case the Exchange had no knowledge of any fraud on the part of the brokerage firm, or indeed any knowledge of any of the details of the negotiations by means of which McDonnell raised its capital.

The plaintiffs' attempt to avail themselves of their 10b–5 remedy against McDonnell was partially successful. Plaintiffs Margaret Mary McDonnell Murphy and the trustees obtained jury verdicts which are not the subject of this appeal. However, the jury returned a verdict adverse to plaintiff Anna M. McDonnell, and she now appeals various evidentiary rulings by the district court. She contends only that certain rulings on evidence were unfairly prejudicial. These claims are not worthy of extensive discussion. The district court has broad discretion to weigh the probative value and potential prejudice of items of evidence. *See* Fed.R.Ev.R. 403. We find no abuse of that discretion.

Affirmed.