George D. ALDRICH et al., Plaintiffs,

v.

NEW YORK STOCK EXCHANGE, INC., and Touche Ross & Co., a partnership, Defendants.

No. 76 Civ. 1951 (HFW).

United States District Court, S. D. New York.

Sept. 12, 1977.

Dickstein, Shapiro & Morin, New York City, Sidney Dickstein, New York City, of counsel, for plaintiffs.

Milbank, Tweed, Hadley & McCoy, New York City, Russell E. Brooks, Martha G. Bannerman, Peter A. Copeland, New York City, for defendant New York Stock Exchange.

Roseman, Colin, Freund, Lewis & Cohen, New York City, Arnold I. Roth, New York City, of counsel, for Touche Ross & Co.

## OPINION

WERKER, District Judge.

Defendant New York Stock Exchange (the "Exchange") has made a motion to dismiss the complaint under rule 12(b)(6) of the Federal Rules of Civil Procedure with respect to those allegations in the complaint based upon section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78j(b), and rule 10b–5, 17 C.F.R. 240.10b–5, on the ground that they fail to state a claim upon which relief can be granted. The Exchange also moves to strike so much of the complaint pursuant to Rule 12(f) as alleges violations of section 9(c) of the Securities Investor Protection Act of 1970, 15 U.S.C. § 78iii(c), upon the ground that such allegations are redundant, immaterial, impertinent and scandalous matter. In a subsequently filed motion the Exchange also moves to dismiss the claims in the complaint based on section 6 of the 1934 Act. Defendant Touche Ross & Co. ("Touche Ross") has moved under Rule 12(b) to dismiss so much of the complaint as applies to it. Both motions by the Exchange and the one by Touche Ross will be disposed of in this opinion.

Plaintiffs assert claims against the Exchange directly under sections 6 and 10 and rule 10b–5 and also for aiding and abetting a violation of section 10 and rule 10b–5, and although this claim is not explicitly stated, it appears that plaintiffs also assert a claim based on section 9(c) of the Securities Investor Protection Act. The claims against Touche Ross are brought directly under section 10 and rule 10b–5 and for aiding and abetting liability, and Touche Ross is further charged with pendent claims of common law fraud and a violation of § 352–C of the General Business Law of New York.

The case is another chapter in the continuing saga resulting from the failure of Weis Securities, Inc. Plaintiffs allege that in 1969 they were customers of and subordinated lenders to Winslow, Cohu & Stetson, Inc. ("WCS"), a broker-dealer registered with the SEC and a member of the Exchange. In September 1969, WCS was purchased by Weis, Volsin and Cannon, Inc. ("Weis"), similarly an SEC-registered broker-dealer and a member of the Exchange. Weis acquired most of the assets of WCS but assumed almost none of WCS's liabilities. The purchase agreement provided that plaintiffs, as subordinated lenders to WCS, would execute subordination loan agreements (the "1969 Weis Agreements") with Weis whereby the assets in plaintiffs' accounts would be subordinated first to claims of creditors of WCS on obligations arising prior to September 30, 1969 and second to claims of Weis creditors on obligations arising from September 30, 1969 through September 30, 1972 when the 1969 Weis Agreements expired. The total value of plaintiffs' accounts subordinated was approximately $3,700,000. The 1969 Weis Agreements were submitted to the Exchange and approved in September of 1969.

In connection with the approval of the 1969 Weis Agreements, the Exchange permitted Weis to consider all the assets in plaintiffs' accounts as capital in the computation of Weis' net capital under Rule 325 of the Board of Governors of the Exchange. In June of 1970 the accumulated, allowed claims of creditors against WCS required that Weis liquidate and utilize plaintiffs'

subordinated accounts to the extent of approximately $1,100,000. Plaintiffs claim that this circumstance demonstrated the questionable financial condition of Weis at that time and that the Exchange failed to exercise its authority to supervise Weis to assure itself that Weis was in compliance with all rules relating to its financial capacity by permitting its continued membership in the Exchange.

In June, 1972 Weis solicited plaintiffs to renew the 1969 Weis Agreements which were to expire on September 30, 1972. Weis furnished to plaintiffs copies of its financials as at May 26, 1972 which had been filed with the Exchange. I do not think that there is any quarrel with the fact that these financials were materially false and misleading in that they overstated Weis' earnings and net worth by approximately $2,000,000.

Plaintiff Higginson, allegedly on behalf of himself and the other plaintiffs, discussed the proposed renewed subordination agreements with representatives of the Exchange. It is further alleged that at no time did the Exchange express concern over the financial condition of Weis or disclose to plaintiffs the fact that the Weis financial statements which had been filed with the Exchange were fraudulent and misleading or that Weis had been operating in violation of the net capital requirements of the Exchange or that the Exchange had failed to perform its obligations to supervise Weis' financial condition on a close and continuing basis.

Plaintiffs say they relied not only upon the financial statements of Weis but also upon the Exchange's proper supervision of Weis in executing the new subordination loan agreements in August, 1972 that would mature on May 31, 1974.

After the execution of the new subordination loan agreements in August of 1972, Weis prepared and distributed to the plaintiffs two additional financial statements as at November, 1972 and as at February, 1973, each of which incorporated the material omissions and misrepresentations contained in each earlier statement in addition to contributing new omissions and misrepresentations. Touche Ross reported on neither the November, 1972 nor the February, 1973 statements.

In May of 1973 it was first learned that Weis had made numerous false entries in its books and records since April, 1972 which resulted in material overstatements of income and profit and underaccruals of liabilities. The discovery of the falsity of these entries revealed that Weis was operating in violation of the net capital rule of the Exchange. The SEC thereupon filed suit against Weis and its officers, and the Securities Investor Protection Corporation brought suit seeking the appointment of a trustee to liquidate Weis. On May 24, 1973 the Exchange suspended Weis which is now bankrupt and in liquidation.

Touche Ross is charged primarily with breaching its duty to inquire into Weis' financial condition and to disclose to the plaintiffs material facts which it would have discovered if it had conducted an audit of Weis in accordance with generally accepted auditing standards and with having acted with gross negligence and in reckless disregard of the true facts of Weis' financial condition. Through its conduct Touche Ross is claimed to have aided and abetted Weis' violation of section 10(b) of the 1934 Act and to have incurred liability under pendent state claims.

*The Claims Against The Exchange*

■ The claims which are based upon section 6 of the 1934 Act have been disposed of by the Court of Appeals for this Circuit. In *Lank v. New York Stock Exchange*, 548 F.2d 61 (2d Cir. 1977), the Second Circuit held that a member or the receiver of a member has no cause of action under section 6 for failure by a securities exchange to force a member to comply with the exchange's rules. In *Arneil v. Ramsey*, 550 F.2d 774 (2d Cir. 1977), the Second Circuit restricted further the availability of a remedy under section 6 by ruling that limited partners, subordinated lenders or purchasers of non-publicly traded securities of a member of the exchange have no cause of

action under section 6. The Second Circuit reaffirmed the fact that no claim under section 6 may be asserted by subordinated lenders in *Murphy v. McDonnell & Co.*, 553 F.2d 292 (2d Cir. 1977). As a consequence these plaintiffs as subordinated lenders may not assert a section 6 claim.

■ Moreover, the complaint fails to state a cause of action against the Exchange for either direct or aider and abettor liability under section 10(b) and rule 10b–5. There is no allegation that the Exchange made any affirmative misrepresentation to plaintiffs of which the Exchange had knowledge. Its liability therefore must be based upon some duty to disclose unless the Exchange can be said to be an aider or abettor or that it substantially participated in concealment. *Murphy v. McDonnell*, 553 F.2d at 295; *Lanza v. Drexel & Co.*, 479 F.2d 1277 (2d Cir. 1973) (*en banc*).

■ At no point do plaintiffs allege that the Exchange had knowledge of the fraud which was perpetrated by Weis in the May 26, 1972 financials. In fact, as the Exchange notes, plaintiffs specifically admit, in paragraph 24 of the complaint, that the Exchange had no such knowledge:

> "24. Had the Exchange performed its duties as aforesaid, *it would have discovered* promptly that Weis was in a precarious financial condition and that Weis had filed and was utilizing fraudulent financial statements." (Emphasis added).

There is no allegation that the Exchange participated in the concealment of the entries, nor any allegation of an agreement with Weis to conceal from investors and other members facts derogatory to Weis' reputation. The absence of such allegations can be explained by the fact that the frauds committed by Weis led to the indictment and conviction of its principal officers. *United States v. Levine, et al.*, No. 73 Cr. 693 (S.D.N.Y.1973). One of the allegations in Count 1 of the indictment is as follows:

"[D]efendants LEVINE, LEIT, KUBIE and LYNN . . . did fraudulently conceal from Weis' auditors, Touche, Ross & Co., the existence and nature of the aforesaid fraudulent books and records and, in addition, . . . did create directly and indirectly wholly fictitious documentation for the aforesaid fraudulent entries."

Levine, Leit and Kubie, officers of Weis, pled guilty to Count 1 of the indictment thereby admitting these allegations. Insofar as substantial assistance or aiding and abetting is concerned,[1] none of the Exchange's alleged acts—its approval of the renewal of the 1969 Weis Agreements or its discussion through its representatives concerning the proposed renewal with plaintiff Higginson—can constitute active participation. *See Weinberger v. New York Stock Exchange*, 403 F.Supp. 1020, 1026 (S.D.N.Y. 1975) (approval by exchange of admission as limited partner to a member of the exchange gives rise to no duty of disclosure). There is no allegation that an officer of the Exchange personally solicited a renewal of the agreements with those who made subordinated loans as occurred in *Fischer v. New York Stock Exchange*, 408 F.Supp. 745 (S.D. N.Y.1976). The only allegation as far as the discussion plaintiff Higginson had with officers of the Exchange is that:

> "18. Plaintiff, James Higginson, on behalf of himself and other plaintiffs, *discussed* the proposed renewed subordination loan agreements with representatives of the Exchange." (Emphasis added).

The Exchange is alleged in connection with that conversation merely to have omitted to express concern over Weis' financial condition or to reveal that the financial statements were false and misleading or that Weis had violated the net capital requirements or that the Exchange failed to enforce its rules in this regard. This conduct cannot be said to have given rise to a duty of disclosure under section 10(b) and rule 10b–5.[2]

---

1. *See Rochez Bros. v. Rhoades*, 527 F.2d 880 (3d Cir. 1975); *Woodward v. Metro Bank*, 522 F.2d 84, 94–97 (5th Cir. 1975); *Lanza v. Drexel & Co.*

2. Since there is no allegation of scienter, there

■ The Court of Appeals has indicated that the potential liability of the Exchange to *public* investors is the limit of the Exchange's duties under section 6. I have discerned no duty of the Exchange to disclose with respect to plaintiffs, and there is no justification for imposing a liability under section 10(b) and rule 10b–5 which cannot be asserted under section 6. *Murphy v. McDonnell & Co.*; *Hirsch v. duPont*, 553 F.2d at 760–61. Moreover, while it is unclear whether or not the plaintiffs assert a claim under this section since there is no reference to it in the first paragraph of the complaint, there could be no private right of action under section 9(c) of the Securities Investor Protection Act, *Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975), and thus plaintiff cannot in any event use that section as an independent basis for an action against the Exchange.

Defendant Exchange's motions to dismiss the complaint under 12(b)(6) with respect to sections 6 and 10 and rule 10b–5 are granted.

### The Claims Against Touche Ross

■ Moving now to plaintiff's claim against Touche under section 10(b) and rule 10b–5, it appears that the complaint, which is based upon gross negligence and recklessness, fails to allege facts such as would amount to scienter under *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Holdsworth v. Strong*, 545 F.2d 687 (10 Cir. 1976).

The plaintiffs allege that Touche Ross certified the May 26, 1972 financial statements of Weis without any knowledge or reasonable grounds to believe that they were prepared in accordance with generally accepted accounting principles and fairly presented the financial position of Weis,

and that Touche Ross failed to conduct an audit of Weis which was in accordance with generally accepted auditing principles. Plaintiffs further allege that Touche Ross breached a duty to inquire into and disclose to the plaintiffs the true state of Weis' financial condition which it would have discovered had it conducted its audit in accordance with generally accepted auditing standards. There are no allegations of intent to deceive, manipulate or defraud as are required by the Supreme Court's decision in *Hochfelder*, that scienter must be alleged in an action based on section 10(b). *See also Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033 (7th Cir. 1977); *Herzfeld v. Laventhol, Krekstein, Horwath & Horwath*, 540 F.2d 27 (2d Cir. 1976); *Lanza v. Drexel & Co.* The simple statement that Touche Ross failed to comply with auditing standards or accounting principles in the absence of specification as to what standards and principles were violated and in what manner such non-compliance occurred does not support an inference of fraud. *Poloron Products, Inc. v. Lybrand Ross Bros. & Montgomery*, 534 F.2d 1012 (2d Cir. 1976) (allegations only of "fraud" and "deceit" not adequate to allege scienter); *Levy v. First National City Bank*, No. 75 Civ. 1335 (S.D.N.Y. Aug. 26, 1975).

■ Although plaintiffs characterize Touche Ross' conduct through the use of the terms "gross negligence" and "reckless disregard," the Supreme Court has not yet determined whether and if so under what circumstances recklessness can suffice for liability under section 10(b) and rule 10b–5. *Hochfelder*, 425 U.S. at 193, n. 12, 96 S.Ct. 1375.[3] Without further elaboration in the complaint as to what specific acts Touche Ross is charged with committing or omitting to do, however, the complaint fails to state any facts which could serve as the basis for an inference that the conduct was

is no need to consider whether the Exchange could be held liable as an aider or abettor merely through its inaction. *Hirsch v. duPont*, 553 F.2d 750 (2d Cir. 1977).

3. *See, e. g., Utah State University v. Bear Stearns & Co.*, 549 F.2d 164, 169 (10th Cir. 1977) (willful or intentional misconduct or equivalent is required under section 10(b) or

rule 10b–5); *Sanders v. John Nuveen & Co., Inc.*, 554 F.2d 790 (7 Cir. 1977) (reckless disregard sufficient to constitute scienter); *Sundstrand Corp. v. Sun Chemical Corp.* (recklessness is a basis for rule 10b–5 liability); *McLean v. Alexander*, 420 F.Supp. 1057 (D.Del.1976) (actual knowledge in misrepresentation case sufficient to constitute scienter).

even reckless disregard or conscious avoidance of the truth. Thus, while under *Hochfelder* it is unclear as to whether or not a section 10(b) and rule 10b–5 violation can be based on reckless behavior, even if such a claim were permitted, the facts as alleged in this complaint are inadequate to support it. The only specific act with which Touche Ross is charged is a violation of an SEC requirement under 17 C.F.R. 240.15c 3–3(e), failing to reveal that Weis was not maintaining a special reserve bank account for the exclusive benefit of customers. That rule, however, did not become effective until January 15, 1973, Exchange Act Release No. 9856, 37 Fed.Reg. 25,226 (1972), and was not announced until November 13, 1972. The financial statements which were reported on by Touche Ross were statements as at May 26, 1972; Touche Ross cannot be held by hindsight to that rule. Moreover, the other two financial statements supplied by Weis were not reported on by Touche Ross and therefore obviously cannot serve as the basis for a cause of action against it. *Rothstein v. Seidman & Seidman*, 410 F.Supp. 244, 249 (S.D.N.Y.1976) (Weinfeld, J.).

▓▓▓ Moreover, the failure to illuminate the complaint with such details violates Rule 9 of the Federal Rules of Civil Procedure which requires that "the circumstances constituting fraud . . . shall be stated with particularity." Rule 9(b) even when read in conjunction with Rules 1 and 8 requires the plaintiffs to state with some specificity the facts surrounding Touche's misconduct. *Segan v. Dreyfus Corp.*, 513 F.2d 695 (2d Cir. 1975) (*per curiam*); *Segal v. Gordon*, 467 F.2d 602 (2d Cir. 1972); *In re Tenneco Inc. Securities Litigation*, 426 F.Supp. 1187 (J.P.M.L.1977); *Lincoln National Bank v. Lampe*, 414 F.Supp. 1270 (N.D.Ill.1976); *Lewis v. Black*, 74 F.R.D. 1 (E.D.N.Y.1975). As the court stated in *Segal* :

"Rule 9(b)'s specificity requirement stems not only from the desire to minimize the number of strike suits but also more particularly from the desire to protect defendants from the harm that comes to their reputations or to their goodwill when they are charged with serious wrongdoing."

*Id.* at 607. The allegations in this complaint do a disservice to the salient purpose behind that rule.[4] Furthermore the failure to allege scienter or some equivalent in the complaint is particularly egregious in light of the admissions made by the three defendants in the criminal case. *Rich v. Touche Ross & Co.*, 415 F.Supp. 95 (S.D.N.Y.1976) (where in an action by customers arising out of the same facts as in the case at bar, the court noted the inadequacy of the vague allegations of scienter in light of the factual background of the convictions of the Weis officers). The additional allegation that Touche Ross had a duty to inquire into and discover the true state of Weis' financial condition and to comply with generally accepted auditing standards which it breached is no more than the equivalent of an assertion that Touche Ross should have known of the fraud and is an indication of nothing more than negligence. This is not a proper basis for a claim under rule 10b–5. *Hochfelder; Miller v. Schweikart*, 413 F.Supp. 1062 (S.D.N.Y.1976).[5]

▓▓▓ It may be that certain conduct on the part of an auditor would be such as to warrant a trier of fact to find that it exhibited reckless conduct if indeed a sec-

---

**4.** That part of Rule 9(b) which permits a general averment of condition of mind does not preclude the allegation with particularity of the circumstances constituting the fraud required under the first sentence of the rule.

**5.** The defendant Touche Ross also argues that after *Hochfelder* there is some doubt as to the continued existence of aider and abettor liability. Although it is unnecessary for me to reach this issue, I note that in *SEC v. Universal Major Industries Corp.*, 546 F.2d 1044 (2d Cir. 1976), the Court of Appeals for this Circuit upheld a cause of action for aider and abettor liability in an injunctive proceeding brought by the SEC under section 5 of the Securities Act of 1933. Although distribution of unregistered securities proscribed by section 5 might involve issues different from those raised by a section 10 violation of the 1934 Act, the basic purpose of the 1934 Act would be as readily defeated as that behind section 5 if those who knowingly assist in deceptive devices in connection with the purchase or sale of securities are permitted to do so with impunity.

tion 10(b) and rule 10b–5 cause of action may be predicated on such behavior. It is conceivable, for example, that if rule 15c 3–3(e) had been in effect at the relevant time, the failure to establish a special reserve in compliance with it would have been a failure which would be patent and obvious to any accountant, and a failure to reflect such an account in the audited statement would arguably be such recklessness as to warrant a finding of aiding and abetting a violation of section 10 and rule 10b–5. But, since knowledge of the fraud, not simply knowledge of material omissions is essential, plaintiffs would even in this situation have to allege and prove knowledge and that the omission was done in furtherance of the fraud in order to establish that the accountant was an aider and abettor. *See Raskas v. Supreme Equipment & Systems Corp.*, 71 F.R.D. 672 (E.D.N.Y.1976); *Herzfeld v. Laventhol, Krekstein, Horwath & Horwath.* Presumably, the making of a clean report when in fact no audit had been made at all would also fall within the category of facts from which reckless disregard of the truth could be inferred since there would be no knowledge of whether the financial statements fairly represented the status of the corporation. If on the other hand, it were alleged that each of the auditing standards had been complied with but that the auditor's tests failed nonetheless to uncover the fraud, this would not be the basis for a charge of reckless behavior. Moreover, an auditor is not a guarantor of the reports he prepares. *See O'Connor v. Ludlam*, 92 F.2d 50 (2d Cir.), *cert. denied*, 302 U.S. 758, 58 S.Ct. 364, 82 L.Ed. 586 (1937); *SEC v. Republic National Life Insurance Co.*, 378 F.Supp. 430, 440 (S.D.N.Y. 1974). The purpose of an audit is to merely ascertain whether the books and records fairly reflect the financial condition of the organization under audit.

■ Under *Exchange National Bank v. Touche Ross & Co.*, 544 F.2d 1126 (2d Cir. 1976), the party asserting that a note of more than nine months maturity is not governed by the 1934 Act has the burden of showing that the context requires that the note not be treated as a security. Plaintiffs have not detailed the contents of the 1969 Agreements or the terms of renewal of the Agreements and have merely alleged in the complaint that the renewal of the subordinated loan agreements (which was of one year and nine months duration) is a security. No copy of the renewal or of the original agreements was appended to the complaint. Nevertheless, the plaintiffs, having alleged that a renewed subordinated loan agreement of sufficient duration was entered into, appear to have met their initial burden under *Exchange National Bank*, and the burden would now shift to the defendants to show that no security was involved. It is unnecessary for me to decide whether or not these agreements were securities,[6] for plaintiffs have failed to adequately allege the existence of a "purchase or sale" of the alleged security.[7] As Touche Ross argues, there is no allegation that the renewal of the subordination agreements in August, 1972 resulted in plaintiffs receiving anything in return or that the nature of plaintiffs' position had changed in any respect. An extremely similar situation was considered in *Rothstein v. Seidman & Seidman.* Some of the plaintiffs who were subordinated lenders and limited partners of a broker-dealer alleged that a purchase and sale had taken place by reason of the fact that the execution of an agreement permitting their loans to a broker-dealer to remain outstanding and of an amendment to the partnership agreement was a "reinvestment." The court noted prior to considering the substance of that contention that irrespective of the merits of the theory, it had not been properly pleaded where the allegations in the complaint merely stated that money had been loaned by the plaintiffs and that they permitted such loans to remain outstanding. 410 F.Supp. at 247.

---

6. *See New York Stock Exchange v. Sloan*, 394 F.Supp. 1303 (S.D.N.Y.1975), where the court ruled that subordination agreements are securities.

7. Judge Lasker in *Ingenito v. Bermec Corp.*, 376 F.Supp. 1154, 1181 (S.D.N.Y.1974), noted that a purchase or sale takes place when the nature of an investor's relationship with a business is "substantially altered by the creation of new rights or obligations."

The effect of the absence of specific allegations here is the same, and a purchase and sale, an essential element of plaintiffs' causes of action, is inadequately pleaded. For this additional reason the court is without jurisdiction over the action.

Inasmuch as the pendent state claims based on common law fraud and on the General Business Law are dependent upon the existence of federal jurisdiction which I have found does not exist these claims are dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The complaint is dismissed for the reasons stated.

SO ORDERED.